DECISION AND JUDGMENT ENTRY
{¶ 1} Appellant/cross-appellee, Lucas County Children Services ("LCCS"), and appellee/cross-appellant, Linda Kirsteins, appeal a judgment entry entered by the Lucas County Court of Common Pleas in the above-captioned case. For the reasons that follow, we affirm in part, and reverse in part, the judgment of the trial court. *Page 2 
 {¶ 2} On September 8, 2003, Kirsteins filed a complaint against the Board of Lucas County Commissioners, LCCS, and LCCS employees Dean Sparks, Joseph DeStazio, Jennifer Davis, Jacalyn Brown, Kris Kapela, and Brent Reed. The complaint set forth claims against all of the defendants for: (1) breach of contract; (2) interference with appeal rights, abuse of power, and denial of due process; (3) intentional interference with economic relations; and (4) defamation. The allegations in the complaint stemmed from the revocation of Kirsteins' day care provider certification.
 {¶ 3} On February 23, 2004, the Board of Lucas County Commissioners was dismissed from the case. Following summary judgment litigation, just two basic issues were left for trial: (1) whether the named individual defendants committed an intentional tort against Kirsteins by acting with malicious purpose, bad faith, or in a wanton and reckless manner in the investigation of alleged child abuse; and (2) whether LCCS breached a contract with Kirsteins for placement of day care children.
 {¶ 4} The matter proceeded to bench trial on March 22-23, 2006. At trial, evidence of the following was adduced. For 11 consecutive years, from 1990 through 2001, Kirsteins had been a licensed day care provider for LCCS. Each year, she would receive a one-year child care certificate from the Lucas County Department of Job and Family Services. On July 3, 2001, she was issued the certificate which underlies the instant action.
 {¶ 5} On the same date, Kirsteins signed a one-year vendor agreement with LCCS as a "Type B" certified day care provider. The vendor agreement unilaterally gave *Page 3 
the choice to LCCS to place children in Kirsteins' home and gave Kirsteins contractual rights to payment if her services were utilized. The language of the vendor agreement did not obligate LCCS to use Kirsteins' day care services, or did it guarantee that any children would be placed in day care at her home.
 {¶ 6} On September 6, 2001, a 13-month old boy who was privately placed in Kirsteins' home sustained burns on the back of his hands. LCCS immediately began an investigation of the matter. As part of the investigation, LCCS conducted interviews with members of the child's family and with Kirsteins herself. The child's family denied that the child was injured prior to his arrival at Kirsteins' house. They also indicated that the child was scheduled to move to Kentucky with his custodians the day after the incident occurred.
 {¶ 7} Kirsteins reported to LCCS that she noticed an oval-shaped red mark on the back of the child's left hand shortly after he was dropped off by his custodial aunt at 10:40 a.m. on the date in question. She stated that she initially thought that the mark was just a rash, and she denied seeing any abnormality on the right hand. She also stated that beginning at 11:00 a.m. she made several attempts to contact the custodial aunt by phone, but got no answer until about 2:30 p.m.
 {¶ 8} The custodial aunt, upon receiving Kirsteins' call, immediately went to Kirsteins' home to look at the injury. That afternoon, she took the child to the emergency room, where he was seen by a Dr. Dobson. Dr. Dobson reported that, based on the *Page 4 
rapidly spreading nature of the injury, the burns must have happened during the time that the child was at Kirsteins' house.
 {¶ 9} LCCS obtained a second medical opinion from W. David Gemmill, M.D. Dr. Gemmill reported that without any understanding of how the burns occurred, he could not pinpoint a timeframe for when the burns occurred. As a result, Dr. Gemmill suggested that both the child's home and Kirsteins' home be examined. LCCS did, in fact, inspect both homes as part of its investigation.
 {¶ 10} Finally, LCCS heard from a police officer who had investigated the incident and, as part of that investigation, had interviewed Kirsteins. The officer reported his conclusion that there was not enough evidence to charge Kirsteins with a crime.
 {¶ 11} LCCS, after completing its own investigation, came to the conclusion that the child was injured while in Kirsteins' care, and that physical abuse by Kirsteins was indicated. Based upon that conclusion, LCCS revoked Kirsteins' day-care license. LCCS advised Kirsteins of her right to appeal the revocation decision and of her right to reapply for a day-care license after one year.
 {¶ 12} Kirsteins pursued an appeal, which was heard by a hearing officer with the Department of Jobs and Family Services ("JFS") in December 2002. For reasons not made clear in the record, LCCS failed to make an appearance at the hearing. As a result, no evidence was presented to justify the revocation of Kirsteins' license. The hearing officer found that, due to the lack of evidence, the license revocation was inappropriate. *Page 5 
In this way, Kirsteins' appeal was sustained. However, the hearing officer additionally found that because the certificate expired in July 2002, no action was required.
 {¶ 13} When Kirsteins reapplied for a day-care license in October 2002, LCCS advised her that the application depended on the outcome of her appeal. Despite her victory on appeal, by letter dated February 5, 2003, LCCS informed Kirsteins that it was denying her certification based on the finding of "indicated physical abuse". The letter also advised Kirsteins of her right to appeal, but she never pursued that option.
 {¶ 14} Following trial, at a hearing held on March 31, 2006, the court issued a ruling finding in favor of the defendants with respect to both the intentional tort and breach of contract claims. This ruling was summarized in an opinion and journal entry journalized on April 6, 2006. On May 2, 2006, the trial court issued related findings of fact and conclusions of law. Among the court's conclusions was a statement that, although there was circumstantial evidence that the incident occurred under Kirsteins' watch, there was no evidence that Kirsteins abused the child. At best, the court determined, the evidence showed that there was neglect that resulted in a physical injury.
 {¶ 15} Apparently on the basis of the foregoing conclusion, the trial court issued in conjunction with the ruling in favor of the defendants, an order granting relief to plaintiff Kirsteins. Pursuant to the order, LCCS was directed to delete from its records any reference that Kirsteins was the perpetrator of child abuse, and to change the final conclusion in its investigation to state that the perpetrator of the abuse is "unknown." The trial court additionally ordered that the LCCS response to a third-party inquiry *Page 6 
regarding Kirsteins must state only that her day care license "was not renewed," without providing any explanation for the non-renewal.
 {¶ 16} LCCS and Kirsteins timely appealed the trial court's decision. LCCS raises the following assignment of error:
 {¶ 17} "THE TRIAL COURT LACKED AUTHORITY AND JURISDICTION IN ORDERING LUCAS COUNTY CHILDREN SERVICES TO CHANGE ITS FINDINGS IN THE ABUSE INVESTIGATION AND OMIT INFORMATION IN ITS RESPONSE TO REQUESTS FOR INFORMATION FROM THIRD PARTIES."
 {¶ 18} Kirsteins raises the following two cross-assignments of error:
 {¶ 19} I. "WHERE THERE IS ADMINISTRATIVE RES JUDICATA, IT IS ERROR FOR A TRIAL COURT TO DENY ITS COLLATERAL ESTOPPEL EFFECT ON THE PROCEEDINGS."
 {¶ 20} II. "A TRIAL COURT RENDERS A "COMPROMISE VERDICT" AGAINST THE MANIFEST WEIGHT OF THE EVIDENDCE WHERE IT INCONSISTENTLY RULES THAT NO CONTRACT BREACH NOR INTENTIONAL TORTS HAPPENED WHILE CONTEMPORANEOUSLY ORDERING EXPUNGMENT OF DEFAMATORY INFORMATION FROM AGENCY FILES."
 {¶ 21} We begin by examining Kirsteins' claim, as asserted in her second cross-assignment of error, that the judgment in favor of LCCS was against the weight of the evidence. The law is well-established that "[judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a *Page 7 
reviewing court as being against the manifest weight of the evidence."C.E. Morris v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, syllabus. Here, the record abundantly supports the trial court's finding that the LCCS investigation, while less than thorough, was not conducted with malicious purpose, in bad faith or in a wanton and reckless manner and, thus, did not amount to an intentional tort against any defendant. Likewise, the record abundantly supports the trial court's determination that LCCS's conduct, although arguably less than optimal at points, did not breach the duty of good faith implied in every contract and, thus, did not constitute a breach of contract. Accordingly, Kirsteins' second cross-assignment of error is found not well-taken.
 {¶ 22} We next consider LCCS's claim, as asserted in its sole assignment of error, that the trial court erred in granting relief to Kirsteins in the form of an order requiring that LCCS change its records. Upon reviewing this assignment of error, our initial, and conclusive, observation is that because judgment was not entered in Kirsteins' favor, she was not entitled to relief. For that reason, alone, LCCS's assignment of error is found well-taken.
 {¶ 23} Finally, we examine Kirsteins' claim, as expressed in her first cross-assignment of error, that the doctrine of res judicata applies to compel a finding in her favor with respect to her claim for breach of contract. Specifically, Kirsteins seeks to have res judicata effect given to the following determinations by the JFS hearing officer (1) that no evidence was presented by Lucas County Children Services to justify the revocation of Kirsteins' day-care provider certificate; (2) that the revocation was not *Page 8 
appropriate; and (3) that the appeal was sustained. According to Kirsteins, the granting of res judicata effect to these determinations would operate to bar LCCS's reliance for any purpose on its "indicated" finding of abuse and perpetration by her. As further explained by Kirsteins, "The indicated physical abuse was the sole basis for revoking [Kirsteins'] 2001-2002 day care provider certificate; as Jacalyn Brown, [LCCS] deputy director stated, but for the indicated abuse finding, [LCCS] would yet have [Kirsteins] under contract as a day care provider. It follows that the 2001-2002 contract was unlawfully breached, and that LCCS should be estopped from denying that conclusion."
 {¶ 24} Even assuming, for the sake of argument, the persuasiveness of such convoluted reasoning, we find that Kirsteins' argument must nevertheless fail for the simple reason that the doctrine of res judicata is not relevant to this action. Under the doctrine of res judicata, "[a] valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action."Grava v. Parkman Twp., 73 Ohio St.3d 379, syllabus, 1995-Ohio-331.
 {¶ 25} Kirsteins' appeal of the license revocation was clearly limited to the issue of whether the type B day care provider's certificate should have been revoked, and had no bearing on the outcome of the abuse and neglect investigation conducted by LCCS.[1] Accordingly, Kirsteins' first cross-assignment of error is found not well-taken. *Page 9 
 {¶ 26} For all of the foregoing reasons, the judgment of the Lucas County Court of Common Pleas is affirmed in part and reversed in part, consistent with this decision. Appellee/cross-appellant Kirsteins is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED, IN PART, AND REVERSED, IN PART.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Mark L. Pietrykowski, P.J., Arlene Singer, J., William J. Skow, J., CONCUR.
[1] As noted by LCCS in its brief, Kirsteins never requested an administrative appeal to dispute the outcome of the LCCS disposition report. *Page 1